HENRY FREUND *et al.*

*v.*

BERTHA FREUND.

*Opinion filed October 24, 1905—Rehearing denied Dec. 13, 1905.*

1. INSURANCE—*statute in force becomes part of policy and controls its provisions.* A statute requiring the consent of an insurance company to a change of beneficiary by the insured, which is in force when the policy is issued, is a part of the policy and controls the matter of changing the beneficiary, even though the policy is silent as respects the requirement of the company's consent.

2. SAME—*when change of beneficiary is not effected.* Under a provision of a life insurance policy stating that no change of the beneficiary shall "take effect until endorsed on this policy by the company at its home office," a change of the beneficiary is not effected until those conditions are fulfilled.

3. SAME—*effect where forms of notice to change beneficiary are printed by company.* The fact that the forms of notice to change the beneficiary are prepared and printed by the company and furnished by a branch office to the insured does not waive a provision of the policy requiring endorsement of the change on the policy by the company at its home office, so as to make the signing by the insured of the printed notice an *ipso facto* change of beneficiary.

4. SAME—*requirements for changing beneficiary in life policy must be complied with.* A change of beneficiary in a life insurance policy, as distinguished from a benefit certificate, can only be accomplished by compliance with the provisions in the statute and in the contract respecting such change, and only with the consent of the insurance company.

5. SAME—*effect where the insured has done all he could do to change the beneficiary.* The principle that where the insured has done all he could to effect a change of beneficiary but dies before the change is formally made by the company a court of equity will regard the change as effected does not apply to a change of beneficiary in a life insurance policy, where the statute requires the consent of the company to the change and the policy requires such consent to be indicated by endorsement on the policy by the company at its home office.

6. SAME—*rights of beneficiary are fixed at death of the insured.* The rights of a duly appointed beneficiary under a life insurance policy are fixed by the facts existing at the time of the death of the

insured, and cannot be affected by the fact that the insured had signed a notice to the company to change the beneficiary, which was not forwarded to the company until after his death, and the consent of the company to the change, required by the statute, was never endorsed on the policy as required by its terms.

7. SAME—*after death of insured the company cannot do anything which will waive beneficiary's rights.* While an insurance company may, during the lifetime of the insured, waive performance of provisions for its benefit, yet after the death of the insured, by which the rights of the beneficiary become vested, it can perform no acts which will amount to a waiver as against the beneficiary.

8. SAME—*effect of filing an interpleader and paying money into court.* Filing a bill of interpleader and paying the proceeds of a life insurance policy into court is not such a waiver by the company of non-compliance by the insured with provisions for changing the beneficiary as can be taken advantage of by either of the defendants as against the other.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding.

This is a bill of interpleader, filed on July 17, 1902, in the Superior Court of Cook county by the New York Life Insurance Company against appellants and appellee, setting forth that, on June 10, 1901, the New York Life Insurance Company of the State of New York issued a policy of insurance upon the life of Josef Freund of Chicago in the sum of $5000.00, payable to Bertha Freund, the wife of the insured, or to such other beneficiary, as may have been duly designated at the home office of the company in the city of New York, immediately upon receipt and approval of proofs of the death of Josef Freund, the insured, of Chicago, Cook county, Illinois; that on January 10, 1902, by written notice to the company, the insured changed the beneficiary in the policy to Karl Freund, his son; that afterwards on January 22, 1902, by written notice to the company the insured changed the beneficiary in said policy to Bertha Freund, his

wife, the first beneficiary; that afterwards on May 16, 1902, by written notice to the company the insured changed the beneficiary to Karl Freund, his son; that afterwards on June 16, 1902, the insured presented the policy at the office of the New York Life Insurance Company in Chicago, together with another written statement or order of change, changing the beneficiary in the policy to Bertha Freund, his wife; that on June 17, 1902, Josef Freund died, and the policy ripened into a claim against the company by his death for $4891.30, $108.70 being due to the company for premiums; that the complainant life insurance company is willing to pay said sum to the parties entitled to the same; that appellee, the wife of the deceased, claims the payment of said fund to her as beneficiary, and that the appellants, as legally appointed guardians of the estate of the minor child, Karl Freund, claim said sum as belonging to said minor, and not to Bertha Freund. The bill asks that the sum be brought into court to be applied as the court shall direct, etc. The bill prays that the defendants may interplead, and settle, and adjust their demands between themselves, the complainant agreeing to pay said sum to such of the parties as the court may decree that it rightfully belongs to. The bill was answered by Bertha Freund, claiming the fund in her own right, and by the appellants, as guardians of the minor child, claiming the fund for him. The company paid the money into court.

On April 4, 1903, the Superior Court entered a decree, finding that the fund belonged to appellants, as guardians of the estate of the minor, and ordering that the money be paid to them, and that the company, the complainant below, be discharged and released from further liability, and the suit be dismissed as to the appellee for want of equity, and denying all relief prayed.

An appeal was taken from the decree of the Superior Court to the Appellate Court for the First District, where the decree below was reversed, and the Appellate Court en-

tered a judgment, reversing the decree of the Superior Court, and remanding the cause to that court "with directions to that court to enter a decree awarding the fund mentioned in the bill to Bertha Freund individually." The present appeal is prosecuted from the judgment, so entered by the Appellate Court.

Max Robinson, for appellants:

There would be no right in the assured to change a beneficiary but for the provisions of the law and contract permitting such change. *Hotelmen's Ben. Ass.* v. *Brown,* 33 Fed. Rep. 11.

The right to change a beneficiary being a matter of contract and subject to certain statutory provisions, such change cannot be accomplished except by compliance with the provisions for such change, and only by and with the consent of the company. *Tillman* v. *Life Ins. Co.* 27 Hun, 392; *Fink* v. *Fink,* 171 N. Y. 622; *Thomas* v. *Thomas,* 131 id. 205; *Armstrong* v. *Warren,* 83 Hun, 217; *Hallenberg* v. *District No. 1,* 94 N. Y. 580; *Story* v. *Williamsburg Ben. Ass.* 95 id. 476.

Provisions for the consent of the company to a change of beneficiary, and provisions describing the mode of such change, should be strictly construed. *Hotelmen's Ben. Ass.* v. *Brown,* 33 Fed. Rep. 11; *Fink* v. *Fink,* 171 N. Y. 622; *Supreme Council* v. *Smith,* 45 N. J. Eq. 466; *Armstrong* v. *Warren,* 83 Hun, 217; *Thomas* v. *Thomas,* 131 N. Y. 205; *Insurance Co.* v. *Lupold,* 101 Pa. St. 111; *Harmon* v. *Lewis,* 24 Fed. Rep. 97; Niblack on Benefit Societies, secs. 218, 222, 224; Bacon on Benefit Societies, sec. 307.

Under the law of New York consent of the society to a change of beneficiary is necessary. *Armstrong* v. *Warren,* 83 Hun, 219; *Thomas* v. *Thomas,* 131 N. Y. 205; Joyce on Insurance, sec. 756.

The ineffectual attempt to change a beneficiary does not revoke a former designation, and mere intention to change

a beneficiary cannot be given effect. *Highland* v. *Highland,*
109 Ill. 374; *Fink* v. *Fink,* 171 N. Y. 622; *Thomas* v.
*Thomas,* 131 id. 205; *Wendt* v. *Legion of Honor,* 72 Iowa,
685; *Jinks* v. *Banner Lodge,* 139 Pa. 418.

Equity follows the law, and where there is equal equity
the law will prevail. Equity does not consider as done what
might be done or could be done, but only what in good con-
science should be done or ought to be done. Pomeroy's Eq.
Jur. sec. 365.

After the death of the assured the company can waive
nothing, and no consent or act of the company can defeat or
even affect rights which have attached by the death of an
assured. Niblack on Insurance, sec. 222; *Fink* v. *Fink,* 171
N. Y. 622; *Wendt* v. *Legion of Honor,* 72 Iowa, 685.

CASTLE, WILLIAMS & SMITH, (ARISTA B. WILLIAMS,
of counsel,) for appellee:

Consent of the company to a change of beneficiary was
not necessary. The policy gave consent to a change of bene-
ficiary, and when the insured presented written notice of
the change, accompanied by his policy, it was the duty of
the company to accept the change, and endorsement of the
change on the policy was merely a ministerial act. 2 Joyce
on Insurance, sec. 751; *Supreme Lodge* v. *Terrill,* 99 Fed.
Rep. 330; *National American Ass.* v. *Kirgin,* 28 Mo. App.
80; *Voigt* v. *Kersten,* 164 Ill. 314; *Grand Lodge* v. *Child,*
70 Mich. 163.

When the assured has a right to change the beneficiary
with the consent of the company, and does all he is required
to do and all that is in his power to do, and dies before the
change of beneficiary is consented to by the company, equity
will declare the change complete and act as though the con-
sent had been given. 2 May on Insurance, (3d ed.) sec.
399*o;* 2 Joyce on Insurance, secs. 746-751; 3 Am. & Eng.
Ency. of Law, (2d ed.) p. 985, note 1, and p. 999; Niblack
on Insurance, 223.

Provisions for the consent of the company to a change of beneficiary and provisions prescribing the mode of such change are solely for the company's protection, on compliance with which it alone can insist. They may be waived by the company, and if waived no one else can urge non-compliance. *Martin* v. *Stubbings,* 126 Ill. 387; *Delaney* v. *Delaney,* 175 id. 187; *Moore* v. *Guaranty Fund Life Society,* 178 id. 202; *Life Ins. Co.* v. *White,* 40 Atl. Rep. 5.

Filing a bill of interpleader and paying the money into court, or offering to pay it, as the court shall direct, is a waiver by the company of non-compliance by the assured with provisions for change of beneficiary. *Moore* v. *Guaranty Fund Life Society,* 178 Ill. 202; *Martin* v. *Stubbings,* 126 id. 387; *Life Ins. Co.* v. *White,* 40 Atl. Rep. 5.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The question in this case is, whether the fund in controversy belongs to the appellants, as guardians of the estate of the minor child, Karl Freund, son of the deceased Josef Freund, the insured party named in the insurance policy, or whether it belongs to the appellee, Bertha Freund, the widow of the deceased Josef Freund.

The instrument of insurance in this case was a policy of insurance, issued by the New York Life Insurance Company, and not a benefit or endowment certificate. The matter to be determined is, whether the last change of the beneficiary, attempted to be made by the insured party on June 16, 1902, was valid, and had the effect of making the wife the beneficiary, or whether the son, who was theretofore the beneficiary, still remained so after the death of the insured on June 17, 1902. The laws of New York—the State where the contract of insurance was made—were introduced in evidence, and section 211 in the article on Insurance in the Code of New York is as follows: "Membership

in any such corporation, association or society shall give to any member thereof the right, at any time, with the consent of such corporation, association or society, to make a change in his payee or payees, or beneficiary or beneficiaries, without requiring the consent of such payee or beneficiaries." The policy of insurance upon the life of Josef Freund for $5000.00 contained the following provisions:

*"Change of Beneficiary.*—The insured may, at any time during the continuance of this policy, provided the policy is not then assigned, change the beneficiary or beneficiaries by written notice to the company, at its home office, accompanied by this policy, such change to take effect on the endorsement of the same upon the policy by the company. If there is no beneficiary living at the death of the insured, the amount then insured by this policy shall be paid to the executors, administrators or assigns of the insured," etc.

*"General Provisions of Policy.*—*No. 1.*  Only the president, a vice-president, the actuary or the secretary has power in behalf of the company to make or modify this or any contract of insurance or to extend the time for paying any premium, and the company shall not be bound by any promise or representation, heretofore or hereafter given by any person other than the above."

Endorsed on the policy, also, was the following: "Each selection, change or revocation of a selection shall be made by the insured in writing, and shall not take effect until endorsed on this policy by the company at the home office."

The first written notice, signed by the insured, Josef Freund, at Chicago on January 10, 1902, and addressed to the insurance company at Broadway, New York, recites as follows: "The beneficiary under the accompanying policy, * * * in accordance with the change of beneficiary clause thereof, is hereby changed from Bertha Freund, wife, to Karl Freund, son. The policy is not now assigned." There was a witness to this written notice of change, and it was forwarded from the branch office at Chicago to the home

office in New York on January 11, 1902. The next notice, signed by the insured, dated at Chicago, January 22, 1902, and addressed to the insurance company, was of the same tenor and effect, and changed the beneficiary from Karl Freund, son, to Bertha Freund, wife, and was forwarded from the branch office in Chicago to the home office in New York, and received by the latter on January 24, 1902. The third written notice, signed by the insured and dated May 16, 1902, witnessed and addressed to the insurance company, was of like tenor and effect, except that the beneficiary was changed from Bertha Freund, wife, to Karl Freund, son, and was forwarded from the Chicago clearing house of the company to New York, and received in the latter city by the home office on May 19, 1902.

The company at its home office in New York, upon receiving the first notice of change, dated January 10, 1902, made a written endorsement upon the original policy of that date, signed by its assistant secretary in the following words: "By written notice to the company the insured has changed the beneficiary of this policy to Karl Freund, his son." After the receipt at its home office in New York of the second notice of change dated January 22, 1902, the company made a written endorsement upon the original policy, signed by its assistant secretary, as follows: "By written notice to the company the insured has changed the beneficiary of this policy to Bertha Freund, his wife." After the receipt of the third notice of change, dated May 16, 1902, by the company at its home office in New York, it made a written endorsement upon the policy, signed by its assistant secretary, in the following words: "By written notice to the company the insured has changed the beneficiary of this policy to Karl Freund, his son."

It is conceded that, by the written notice of May 16, 1902, and by the written endorsement of that day upon the original policy as above set forth, Karl Freund, the son, was made, under the terms of the policy, the beneficiary then

entitled to the fund. Upon the death of the insured, Josef Freund, Karl Freund was the legal beneficiary, and entitled to the fund, unless the next change, sought to be made on June 16, 1902, was effectual in making the appellee, wife of the insured, the real beneficiary.

When the deceased Josef Freund, the insured party, took the policy to the local office of the company in Chicago and left there the written notice, dated June 16, 1902, signed by himself, for a change of beneficiary from Karl Freund, son, to Bertha Freund, wife, he received the following receipt:

*"1118 New York Life Building.*                "CHICAGO, ILL., *6/16/1902.*

"Received of Joseph Freund the papers listed below, for transmission to the New York Life Insurance Company for change of beneficiary.—Policy No. 3,157,265.                F. A. JACKSON,
                                                                                Hunt, *Cashier.*"

As has been before stated, the assured died on the next day, to-wit, June 17, 1902. The policy, and the written notice of June 16, 1902, were forwarded from the Chicago clearing house branch office by F. A. Jackson, cashier, on June 19, 1902, two days after the death of the assured, and were received at the home office in New York on June 21, 1902. But no endorsement was made upon the policy, such as was made when the other changes already indicated were requested by the assured. That is to say, no endorsement of the written notice, given by the assured dated June 16, 1902, was ever made by the company at its home office, or anywhere else, upon the original policy.

The position of the appellants is that, under the statute of New York, the assured Josef Freund had no right to change the beneficiary in the policy without the consent of the company; that such consent, under the terms of the policy, could only be indicated by an endorsement on the policy by the company at the home office, and could only take effect when the endorsement of the same upon the policy was made by the company at its home office; and that in this case, as this was not done in the matter of the attempted

change of the beneficiary from the son to the wife on June 16, 1902, the latter had no right to claim the fund. On the contrary, the appellee's claim is that, under the terms of the policy, the assured had the right to change the beneficiary, and that, inasmuch as he went to the company's office in Chicago on June 16, 1902, and left a written notice of a change of beneficiary from the son to the wife, and at the same time left the original policy there for the purpose of having it transmitted to the home office in New York, he did all that he could do, or was required to do, in order to change the beneficiary, and that, although he died before the company acted upon the last notice of change, yet that equity will decree that to be done, which ought to be done, and will act as though the change was complete, and that for this reason the wife, appellee herein, is entitled to the fund in question.

. *First*—It is said by counsel for the appellee that there is nothing in the insurance policy, issued to Josef Freund, which required the consent of the company to the change of the beneficiary. It is true that in the policy itself, which is the contract between the company and the assured, there are no express words requiring the consent of the company; but the statute of the State of New York provides, in substance, that the assured shall have "the right at any time with the consent of such corporation, association or society to make a change in his payee or payees, or beneficiary or beneficiaries without requiring the consent of such payee or beneficiaries." This provision of the New York statute, being section 211 of the article on Insurance in the New York Code, which is admitted to have been in force in New York when the policy here in question was issued, became a part of the contract, embodied in the policy by implication, with the same effect, as if it had been embodied in the policy itself. (*Havens* v. *Fire Ins. Co.* 123 Mo. 417; *Christian* v. *Insurance Co.* 143 id. 460; *Ritchie* v. *Home Ins. Co.* 78 S. W. Rep. 342). All stipulations of the policy must yield to the statute. (*Havens* v. *Fire Ins. Co. supra*). Inasmuch, there-

fore, as the provision of the New York statute thus quoted is by implication a part of the policy or contract, this policy is to be regarded as one, which requires the consent of the company to the change, the same as though the provision of the statute was written into the policy itself.

In addition to the fact, that the consent of the company was thus required, the policy provides that the change of beneficiary shall be made by the insured in writing, "and shall not take effect until endorsed on this policy by the company at the home office." Evidently the policy or contract, in recognition of the requirement of the statute as to consent, provides for an endorsement upon the policy by the company at the home office, as evidence of the company's consent to the change of the beneficiary. This is a plain and clear contract between the company and the assured, and we see no reason why the contract is not valid, and should not be enforced as made. The proof in this case shows clearly, and without dispute, that the company never did give its consent to the change of the beneficiary from the son to the wife, as attempted to be made by the writing of June 16, 1902, and that the company never did make the endorsement, required by the contract, upon the policy, at its home office, or at any other place. Therefore the change did not take effect.

It is said, however, that the printed forms, dated as of the respective dates already indicated, upon which the assured directed that the changes be made, were prepared by the company and furnished to the assured by the company, and that these printed forms by their terms indicate that, as soon as the insured signed one of them, the consent of the company to the change was thereby indicated. We cannot concur in this view. The printed forms, signed by the insured, and by which he made known to the company his intention to change the name of the beneficiary, are to be considered in connection with the language of the policy, or contract itself between the company and the assured.

The policy provides that "the insured may at any time during the continuance of this policy, provided the policy is not then assigned, change the beneficiary or beneficiaries by written notice to the company at its home office accompanied by this policy, such change to take effect on the endorsement of the same upon the policy by the company." The written statement of change of the beneficiary, thus signed by the assured, is designated in the policy or contract as a "written notice to the company at its home office." It being only a notice to the company as to the change desired, it cannot be said that the mere signing of the written notice by the assured at the branch office accomplished the change. This view is further strengthened by the language of the receipt, given by the cashier at the Chicago office to the assured on June 16, 1902, when he left the policy and the written notice with the cashier. The language of the receipt is: "Received of Josef Freund the papers listed below for transmission to the New York Life Insurance Company for change of beneficiary." They were to be transmitted that a change might be made thereafter. The mere fact, that they were left with the branch office to be forwarded to the home office, did not accomplish the change of beneficiary without action by the home office, any more than was such change accomplished by the signing of the written notice by the assured. In addition to this, the policy provides that such change was to take effect only upon the endorsement of the same upon the policy by the company. In one clause of the policy this language is used, to-wit: "such change to take effect on the endorsement of the same upon the policy by the company." In another clause of the policy the following language is used: "Each * * * change * * * of a selection shall be made by the insured in writing, and shall not take effect until endorsed on this policy by the company at the home office." As if to enforce the fact, that the change is only to take effect by reason of the endorsement, the provision in relation thereto is set forth twice in the policy, once

in the affirmative, and a second time in the negative. If it was only to take effect when the endorsement was made by the company upon the policy at its home office, it cannot be said that the change was effected, before such endorsement was made, by anything, done at the branch office by the assured, or by the employe of the company there, whose duty it was to forward the papers for the purpose of having the change made. We are, therefore, of the opinion that the change of the beneficiary could only be made with the consent of the company and in the manner pointed out by the statute and by the insurance policy. This was not done in the present case.

*Second*—It is to be noted that this is an insurance policy, issued by an insurance company, and is not a benefit or endowment certificate, issued by a fraternal society. The right of the assured to change the name of the beneficiary would seem to exist in the case of mutual benefit insurance fraternities where the contract does not take away the power to change the beneficiary. (*Delaney* v. *Delaney,* 175 Ill. 187.) But there is a well recognized distinction between certificates, issued by a mutual benefit society, and an ordinary life insurance policy. The right of the assured to change the beneficiary does not exist as a general thing in the case of an ordinary life insurance policy. (*Delaney* v. *Delaney, supra*). In the present case, where the policy was issued by a New York company and must be governed by the laws of that State, the right of the assured to change the beneficiary is a qualified right; that is, subject to the consent of the company and to the endorsement upon the policy by the company at its home office. The tendency of the decisions in the State of New York, when carefully examined, is to sustain the rule, that a change of beneficiary cannot be accomplished, except by compliance with the provisions in the statute and in the contract for such change, and only by and with the consent of the company. (*Thomas* v. *Thomas,* 131 N. Y. 205; *Fink* v. *Fink,* 171 id. 622; *Hellenberg* v. *District No. 1*

of *I. O. of B. B.* 94 id. 580; *Story* v. *Williamsburg M. M. B. Ass.* 95 id. 476; *Tillman* v. *John Hancock Mutual Life Ins. Co.* 27 App. Div. (N. Y.) 392; *Gladding* v. *Gladding,* 29 N. Y. St. 485; *Ireland* v. *Ireland,* 42 Hun, 216).

In *Olmstead* v. *Benefit Society,* 37 Kan. 96, the court said: "If we assume, as the authorities appear to hold, that a member of a co-operative society retains the power to change the beneficiary, still he cannot exercise his power, except with the consent of the society and in conformity with the rules and regulations of the society." In *Hellenberg* v. *District No. 1 of I. O. of B. B.* 94 N. Y. 586, the court held that the death of the insured, however sudden or unexpected, in no manner excused this prior necessity of completing the change of beneficiary prior to his decease. In *Thomas* v. *Thomas, supra,* the court said: "Undoubtedly the assured in this case acted in good faith, and from the best motives. * * * Very likely he believed that he had so far modified his first appointment of a beneficiary as to include his wife therein, and that, if he had supposed any action on the part of the corporation was necessary, it would have been sought and obtained. But it is not a case where equity can interfere to remedy a defective execution of a power. * * * The insurance company did not in the lifetime of the insured assent to the change of the beneficiary."

In *American Legion of Honor* v. *Smith,* 45 N. J. Eq. 472, it was said: "No person can successfully assert a right to the fund payable on the death of a member, unless he can show that he has been appointed the beneficiary of such member in the manner required by the contract, and that, in cases where the contract requires the assent of the corporation to his designation, he will acquire no right to the fund unless such assent be given." (See also *National Mutual Aid Society* v. *Lupold,* 101 Pa. St. 111; *Wendt* v. *Legion of Honor,* 72 Iowa, 685; *Jinks* v. *Banner Lodge,* 139 Pa. St. 418; *Mutual Life Ins. Co.* v. *Watson,* 30 Fed. Rep. 658;

*McLaughlin* v. *McLaughlin,* 104 Cal. 176; *Grand Lodge of A. O. U. W.* v. *Gandy,* 63 N. J. Eq. 692).

In the case at bar, the attempted change of June 16, 1902, from the son to the wife was not made in accordance with the provisions of the statute and the contract.

*Third*—It is insisted, however, on the part of the appellee, that, if the insured does all that he is required to do and all that it is in his power to do, and dies, equity will declare the change complete. In other words, it is said that, in the case at bar, Josef Freund took his written notice of change and his policy on June 16, 1902, to the cashier at the local branch office in Chicago, and delivered them to him to be forwarded to the home office in New York for the requisite endorsement, and that, although he died on the next day, June 17, 1902, he had done all that he was required to do, and that nothing remained for the company to do, except the formal act of making the required endorsement upon the policy. Whether this rule, laid down in some of the cases, applies here depends upon several considerations. In the first place, it must be true that the company was obliged to make the endorsement upon the policy upon the ground that the making of such endorsement was a merely formal act, not requiring the exercise of any discretion. The question then arises whether or not the making of such endorsement was merely a ministerial act.

It is said in Joyce on Insurance, (vol. 2, sec. 751): "As a general rule it is probably true that, if the assured has taken all the steps necessary and otherwise done all in his power to effect a change of beneficiary, and all that remains to be done is some purely ministerial duty on the part of the officers of the society, then the change will be regarded as complete." In Niblack on Accident Insurance and Benefit Societies, (2d ed. sec. 223) it is said: "When a member has done all that he is required to do under the contract to effect a change of beneficiaries, the change will be deemed com-

plete, even though some ministerial acts of the officers of the society are still to be performed."

A ministerial act may be defined to be "one, which a person performs upon a given state of facts in a prescribed manner in obedience to the mandate of legal authority without regard to or the exercise of his own judgment upon the propriety of doing the act." (20 Am. & Eng. Ency. of Law, —2d ed.— p. 793).

In the case at bar, the company, under the statute, was required to give its consent to the change, and under the contract the company could only indicate its consent to such change by an endorsement in writing upon the policy at the home office. Certainly, the statute meant something when it stated that the right of the assured to change the beneficiary was dependent upon the consent of the company. The giving of consent is not a mere ministerial act, because it involves the exercise of judgment. We do not construe the New York statute, as requiring the company to give its consent independent of the exercise of any judgment on its part whether it was right or proper to give such consent. Therefore, the act here required to be done by the company not being a mere ministerial act, the principle invoked does not apply.

The principle, thus invoked by counsel for appellee, that, when the assured has done all that he is required to do, and dies, equity will declare the change complete, is not really a rule, but is an exception to the general rule, that the change can only be accomplished in compliance with the provisions relating to such change by and with the consent of the company. Most of the cases, cited in support of this exception to the rule, are cases in relation to certificates, issued by fraternal or benefit insurance societies. In many of these cases the assured was required to surrender the old certificate, that had been issued to him, before a new certificate was issued, and the facts showed that the beneficiary had refused to surrender the old certificate, so that the insured was unable to

deliver it up to the company when he applied for a new certificate; and in such cases it was held that the assured had done all he could do, and that it would be inequitable to allow a beneficiary to take advantage of his own wrong. No such state of facts exists here.

In the next place, although it may be true that the beneficiary has no vested right in the fund named in the policy during the life of the assured, and has no greater interest than a mere expectancy, yet, when the assured dies, the beneficiary acquires rights, which cannot be cut off except in the manner prescribed by the contract. If no other valid appointment has been made, that is to say, if no other selection of a beneficiary has been made in the manner, prescribed by the statute and the contract, before the assured dies, then, upon his death, the beneficiary, whose selection was valid, or was in accordance with the provisions of the statute and the contract, has a vested interest in the fund. So, in the case at bar, although the interest of the son, Karl Freund, was a mere expectancy during the lifetime of his father, yet when his father died on June 17, 1902, the son's interest became a vested one, because the change sought to be made in favor of his mother had not been made in accordance with the provisions of the statute and the contract, and did not amount to a valid appointment. This is the rule in the case of a mutual benefit society, and is much more readily applied in case of a regular insurance policy, issued by an insurance company. In Niblack's work on Accident Insurance and Benefit Societies, (2d ed. sec. 218) it is said: "The power, reserved to the member to change the beneficiary, qualifies the right of the beneficiary in the contract. It makes the interest of the beneficiary a mere expectancy while the power to revoke the appointment continues; but this expectancy becomes an absolute right upon the death of the member, unless he has in the manner prescribed defeated it by the affirmative act of changing the beneficiary." This doctrine is sustained by many of the authorities, already referred to and quoted

from. Such is the rule as laid down by the decisions in this State. In *Martin* v. *Stubbings,* 126 Ill. 387, where the contest was between the widow of the deceased and a creditor, it was held that, in the case of mutual benefit societies, the beneficiary named in the certificate of membership acquires no vested right to the benefit to accrue upon the death of the member, until such death occurs, and that all the beneficiary has during the life of the member, owing to the right of revocation in the latter, is a mere expectancy dependent upon the will and act of the holder of the certificate; and it was there said: "She was to all intents and purposes a stranger to the transaction. Her rights could arise only upon the death of Martin, and then only in case he had wholly failed to make a valid and effectual appointment of another beneficiary in her place." . In *Benton* v. *Brotherhood of Railroad Brakemen,* 146 Ill. 570, it was held that the person designated in the certificate of membership of the assured, during the lifetime of the latter, has no vested interest in the certificate or the money that may become payable thereunder, and that the position and rights of the beneficiary become vested at the death of the assured; and it was there said: "Her title to the position and rights of beneficiary became vested, if at all, at Benton's death, and must depend upon the facts as they then existed." So, here, the rights of Karl Freund, the son, depend upon the facts as they existed at the time of the death of his father, and the rights of appellee, the wife of the assured, must depend upon the facts as they then existed. This being so, Karl Freund, the son, was the legal beneficiary, and the attempted appointment of the wife on June 16, 1902, had not become complete by reason of the failure of the company to consent thereto and to make the endorsement upon the policy, as required thereby.

*Fourth*—It follows from this that, under the facts of this case, there was no waiver by the company of its right to give its consent in the way, required by the statute and the policy. It is said by counsel for appellee that the provi-

sions in regard to consent and endorsement, and in regard to the mode of changing the name of the beneficiary, were solely for the protection of the company, and, therefore, could be waived by the company. This is true, provided the acts, alleged to amount to a waiver, were performed during the lifetime of the assured, but the company could not perform any acts, which would amount to a waiver as against the son, Karl Freund, after his rights had vested by the death of his father. The contention is, that the company, by filing the present bill of interpleader and paying the money into court, thereby waived a non-compliance with the provisions for a change of beneficiary. But the filing of the bill for interpleader was an act, which occurred long after the death of the assured, Josef Freund. Some of the authorities seem to hold that the filing of such bill of interpleader amounts to a waiver even after the death of the assured, but these are cases, which arose where there was no such statute as that of New York, here quoted, and where the fact, that the rights of the beneficiary had become vested by reason of the death of the assured, seems to have been overlooked.

In Niblack's work on Accident Insurance and Benefit Societies (2d ed. sec. 222) it is said: "The member and the society may, during the life of the member, waive these requirements, and may agree upon a new bneficiary of the contract, in any manner satisfactory to both parties. It does not follow, however, that after the death of a member, the society may waive these requirements, and recognize as valid an attempted change of beneficiaries, made by the member in a manner different from that set forth in the contract. The rights of the parties are controlled by the contract as it was at the date of the death of the member, and, after these rights have attached by the death of the member, no consent, or act of the society can defeat or even affect them. * * * The payment of the fund into court for the benefit of the person, who may be declared to be entitled to it, in no way improves or prejudices the legal position of

either the original or the substituted beneficiary." (See also *Fink* v. *Fink,* 171 N. Y. 623; *Thomas* v. *Thomas,* 131 id. 210; *Wendt* v. *Legion of Honor,* 72 Iowa, 686). In *Ballou* v. *Gile,* 50 Wis. 619, it was said: "The fact that the association had paid the money into court, instead of paying it directly to the widow to avoid litigation with other claimants, can make no difference as to the rights of the persons claiming the same. If the appellant could not have recovered this money in a direct action against the association, he cannot recover it in this action." In *Ireland* v. *Ireland,* 42 Hun, 214, it was said: "The insurance association was thus allowed to drop out of the contest, upon the theory that it was ready to pay the rightful claimant. Its payment of the money does not in any way better or prejudice the legal position of either party against the other. The party that succeeds must make a case that would have entitled her to succeed against the association."

So, in the case at bar, the mere fact, that the company paid the money into court to be disposed of as the court should direct, cannot operate as a waiver of any of the vested rights of Karl Freund, which accrued by reason of the death of his father. The waiver by the company can only operate in favor of the assured as between the company and the assured, but not as between the company and the third persons, whose rights have vested by the death of the insured.

For the reasons above stated, we are of the opinion the decree of the Superior Court of Cook county was correct, and that the judgment of the Appellate Court, reversing the decree, was erroneous.

Accordingly, the judgment of the Appellate Court is reversed and the decree of the Superior Court is affirmed.

*Judgment reversed.*