## Mary Flannery et al. v. Sarah Gleason.

### Gen. No. 13,172.

1. BENEFICIARY—*when change of effected.* If a member has done all that he is required by law, by the by-laws of the order and by the certificate issued to him, to effect a change of beneficiaries, a change sought to be effected by him, if legal, will be deemed to have been accomplished, notwithstanding the by-laws and certificate

have not been fully complied with through the fault of the order issuing the certificate.

2. BENEFICIARY—*when change of, not effective.* But where a member seeks to make a change of beneficiaries, undertaking to designate a number of beneficiaries to participate in the fund, some of whom are not legally entitled to be named as beneficiaries under the by-laws of the order issuing the certificate, a change will not be deemed to have been effected in favor of any of the persons sought to be substituted as beneficiaries, and the original beneficiary will be awarded the fund.

3. BENEFICIARIES—*when by-law with respect to qualifications of, valid.* A by-law which limits the blood relations entitled to be named as beneficiaries under a fraternal benefit certificate to first cousins, excluding second cousins, is valid.

Bill of interpleader. Appeal from the Superior Court of Cook County; the Hon. WILLARD M. McEWEN, Judge, presiding. Heard in this court at the October term, 1906. Affirmed. Opinion filed April 18, 1907.

BASTRUP & O'NEILL, for appellants.

FRANK P. McGINN, for appellee.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

In this case the question is: Who is entitled to the proceeds of a death benefit of Johanna Condon in the Women's Catholic Order of Foresters?

A certain certificate of membership in that Order, numbered 71,784, dated February 1, 1905, was issued by the Order to Johanna Condon as a member of Nativity Court No. 14. It provided that on certain conditions—one of which was that the member complied in the future with the laws, rules and regulations then governing or that might thereafter be enacted by the Order—the Women's Catholic Order of Foresters would pay to Johanna Condon's sister, Sarah Gleason, one thousand dollars upon satisfactory evidence of the death of said Johanna and upon the surrender of the certificate, provided that said member should be in good standing in the Order at the time of her death, and

provided also, that this certificate should not have been surrendered and another certificate issued at her request in accordance with the laws of the Order. The certificate never seemed satisfactory to Mrs. Condon. It was issued in substitution for a previous one, presumably from the evidence, in favor of a different beneficiary, and the beneficiary to be named in this certificate, No. 71,784, was a subject of discussion and dispute between Mrs. Condon and some other persons. It was finally issued, at her orders, payable to Sarah Gleason; but Mrs. Condon notified Nellie Cooney, the secretary of the local court, Nativity No. 14, to keep it for her, and as Miss Cooney swears, "refused to take it, as she had left the Gleasons and wished to change it— said she was never satisfied."

July 1, 1905, Mrs. Condon was ill, and an inmate of an institution for the indigent and aged, managed by The Little Sisters of The Poor. She sent for Miss Cooney on that day. Miss Cooney carried with her the certificate, and Mrs. Condon told her that she wished to change her certificate and leave $200 to her son, John Simon Condon, $300 to Mrs. Mary Flannery, her half-sister, $250 to her second cousin, Mrs. Mary Ensworth, and $250 for masses and funeral expenses in care of Mrs. Mary Ensworth. Miss Cooney thereupon filled out a printed form on the back of the certificate prepared for a change of beneficiary, and Mrs. Condon signed it. When it was completed it read as follows, the italic words representing the manuscript portion of the indorsement:

"Chicago, July 1st, 1905.
Nativity Court No. 14, W. C. O. F.

To *Mrs. J. McDonnell,* H. Sec'y H. C. W. C. O. F. I herewith surrender and return to the High Court of the Women's Catholic Order of Foresters the within Benefit Certificate No. *71,784,* and direct that a new one be issued to me payable to *her son John Simon Condon* $200, *Mrs. Mary Ensworth, guardian, sister Mary Flannery* $300, *her*
*1328 W. 50th St.*

*cousin, Mrs. Mary Ensworth* ($250) *and* $250 *for masses*
      792 *W. 39th St.*
*and funeral expenses in care of Mrs. Mary Ensworth.*
                        *Johanna Condon X her mark.*
Attest:                              Member's signature.
      *Nellie G. Cooney,*
            Secretary."

Miss Cooney then mailed the certificate with this indorsement to the High Court of the Order at its headquarters in Chicago, asking them to issue a new certificate and send it to her. The recording secretary of the High Court afterward explained her delay in complying with this request by saying that "they had trouble with their printer and had no blank forms for certificates in the High Court."

No new certificate was issued before the death of Johanna Condon, which occurred five days afterward, on July 6, 1905.

Divers claims being made on the Order for the amount of the certificate, it filed a bill of interpleader in the Superior Court of Cook county, making parties defendant thereto John Simon Condon, who was a minor, Charles P. Lowy, his guardian, Mary Ensworth, Mary Flannery, Sarah Gleason and Frank P. McGinn. The bill set forth the foregoing facts, and that Sarah Gleason had made and executed an assignment to Frank P. McGinn of one-half of whatever amount he might recover from the said Order for her, and that Sarah Gleason and McGinn together claimed the $1,000 provided for in the certificate, and that Charles P. Lowy as guardian for John Simon Condon claimed the whole of it; that the Order had expended costs and charges of $115, which it had a right, under the by-laws of the Order, to deduct from the certificate, and that the defendants should interplead as to $885 which it offered to pay into court.

A decree was entered in accordance with the prayer of the bill and $885 was paid into the registry of the Superior Court. On further litigation between the interpleading parties the Superior Court entered a decree in favor of

Sarah Gleason, finding that on February 1, 1905, the Women's Catholic Order of Foresters issued and delivered to Johanna Condon the certificate for $1,000, No. 71,784, as described, payable at her death to Sarah Gleason; that Johanna Condon died on July 6, 1905, without having made any complete and effective change of beneficiaries; that therefore certificate No. 71,784 was in full force and effect at the time of Johanna Condon's death, and that Sarah Gleason was entitled to the fund payable thereunder. The decree ordered that $885 in the clerk's hands be therefore paid to Sarah Gleason or her attorney.

From this decree Mary Flannery and Mary Ensworth appealed to this court. Here they assign for error the failure of the chancellor in the Superior Court to make a great variety of findings—the result of which would have been to have recognized the attempted change of beneficiaries in the certificate, instead of holding it in full force as to Sarah Gleason.

It is difficult in this case to reconcile legal rights with ideal justice. The latter would seem to demand that regard should be had to the evident desire of the member deceased, who seems to have used all the means open to her to change the beneficiary. She tried to make a disposition of the $1,000 (which she evidently looked on as her own, and which in a certain sense, but not in a legal one, might be so considered) in a manner not inconsistent, so far as appears, with right reason and as her desires led her. We should like to give effect to such a disposition of the fund, rather than to cause it to go where Mrs. Condon did not wish it to go, and where one-half of it is, by the pleadings, shown to be already devoted to the expense of this litigation. And to some points strenuously urged by the appellee against the rightfulness of such a disposition according to the wishes of Mrs. Condon, we think there are sufficient answers.

We are not impressed, for example, with the importance of the point made by appellee that she had a vested interest in the certificate and its proceeds. Undoubtedly the general rule that a beneficiary has no vested interest in a benefit

certificate in a fraternal society while the member lives, is modified by the doctrine laid down in various cases in this State, that out of peculiar agreements and circumstances such a vested interest may arise.

But the evidence in this record is not sufficient to establish any such vested interest in Sarah Gleason. It was of very little importance. The ten dollars that Miss Cooney thought Mrs. Gleason had paid may have been Mrs. Condon's money. It may have been paid back; it may indeed never have been paid. Testimony to the impressions of an officer who professed to know hardly anything about it, was not the means to prove a fact on which the whole case might turn if it depended on the question of a "vested interest."

Nor do we think controlling the mere fact that the Order did not, by cancelling the old certificate and issuing a new one, signify its assent to the change of beneficiary, and complete the transaction which Mrs. Condon had done everything in her power to bring about.

The case of Freund v. Freund, 218 Ill., 189, is easily distinguishable from the one at bar, and is indeed distinguished by the explicit language of the court from one arising on a benefit certificate of a fraternal society. Freund v. Freund turned on a provision of the statutes of New York.

When Johanna Condon had done everything she could to change her beneficiary—if she had the right to make the change she desired—equity would properly regard that done which should have been done, and neither in favor of the Order itself, nor against the new beneficiary named, allow the absence of the seal of the local council on the indorsement, or the delay caused by "a change of printers," or other action or default of the Order, to prevent the taking effect of the member's wishes.

But it is to be carefully noted, however, that the invocation of this rule of equity jurisprudence is necessary to give the effect of a completed transfer to what is in fact an uncompleted transaction, for the provision in the certificate itself is, in effect, that it shall stand under certain conditions unless it has been surrendered. and *another cer-*

*tificate has issued* at the request of the member; and a by-law of the Order says that is the *"issuing of a new certificate"* that "shall cancel and render null and void any and all previous certificates to such member." While, therefore, equity will consider that done which should have been done, we must still inquire what should have been done. Manifestly, if the designation of the new beneficiaries was illegal —if the Order could not legally issue the new certificate called for by the indorsement—it should not have been done, and equity will not consider it done.

It is here that we think that the legal rights, which we must protect, prevented the chancellor from giving effect to the decedent's wishes, and prevent us from interfering with his judgment.

After careful consideration we are of the opinion that the designation of the new beneficiaries was an attempt on the part of Johanna Condon to secure a new certificate which the Order had no legal right to issue.

The designation of her son and of her half-sister, or either of them solely, would have been good, but to divide the amount of the certificate into various parts and give some parts to a beneficiary not permissible under the law, was to invalidate and render futile the whole attempted change. The minor son contended through his guardian, in the court below, as his answer shows, that the old certificate was surrendered, but that the new one had not become operative, and that he was entitled to the whole fund, but as he has not appealed, this contention is not here, except as it must be in substance passed on in formulating our opinion on the rights of appellants.

It is plain to us that the new designation must be lawful and possible in all its parts, or it is not such a designation as the Association can validly act on. If it be not such a designation, the Order cannot make a new one for the member. It cannot assume her intentions to be otherwise than expressed, or undertake to say what they would have been had she been properly informed as to the powers of the Order.

Flannery v. Gleason.

The only duty resting on the Association in such a case would be to return the certificate with proper information. In such case the old beneficiary would remain designated until some other and legally possible change was made. If, therefore, any part of the designation of the new beneficiaries in the indorsement of Mrs. Condon was legally impossible, it cannot be said that equity, by assuming that to be done which should have been done, can supply the actual issuance of the new certificate. Mrs. Condon, in that case, has *not* done all that she could properly do to change the beneficiary, and the change cannot therefore be assumed to have been made.

In our view, therefore, the first question is whether Mary Ensworth is a person capable of taking a portion of the benefit fund, under the limitations which the law imposes on the Women's Catholic Order of Foresters as to its benefit certificates. If she is not, it is a matter of no importance whether or not the final provision of the indorsement, "$250 for masses and funeral expenses in care of Mary Ensworth" would otherwise be legal, for the only ground on which this could be possibly sustained is that Mary Ensworth herself is a permissible beneficiary under the law.

Mary Ensworth was a second cousin of Mrs. Condon, the daughter of a first cousin of Mrs. Condon's father. Their common ancestor, therefore, was one of their great-grandfathers.

The Act of June 22, 1893, on Fraternal Beneficiary Societies (as amended), under which the Women's Catholic Order of Foresters was incorporated and licensed to do business in this State, provides that "payment of death benefits shall only be made to the families, heirs, blood relations, affianced husband or affianced wife, or to persons dependent upon the member, or to charitable organizations or religious institutions."

It is not claimed that Mary Ensworth answers to any of the descriptions here made of possible beneficiaries except that of "blood relations." It is asserted, however, that as a second cousin she is a blood relation.

The certificate of incorporation of the Association provides, like the statute, that "the payment of death benefits shall be made only to the families, heirs, blood relations, affianced husband or affianced wife of or to persons dependent on the member," but adds, "and such benefits shall not be willed, assigned or otherwise transferred to any other person."

The constitution of the High Court of the Order, which was binding on Johanna Condon and subject to the provisions of which Mrs. Condon held her membership and certificate, contains the following:

"Endowments may be made payable to the following class of persons:

To a member's husband, children, grandchildren, father and mother, grandparents, brothers and sisters, nieces and nephews, *cousins in the first degree,* aunts and uncles, any member of the family, next of kin who would be distributees of the personal estate of such member upon her death intestate, to religious and charitable institutions."

This provision, if its limitation of possible beneficiaries to blood relations not more distant than cousins in the first degree, is valid, cuts Mary Ensworth off from the permissible list.

It is argued that the constitution or by-laws are inconsistent with the statute, and that Wallace v. Madden, 168 Ill., 356, is authority for the position that the statute and not the constitution must govern, and that the persons who may become beneficiaries cannot be made more restricted by by-law than it is by the statute. This case would seem to bear out this contention; but the latest expression of the Supreme Court in Murphy v. Nowak, 223 Ill., 301, pp. 312 and 313, is directly to the contrary. An analysis of that case will show that it was on a by-law of the Catholic Order of Foresters limiting the persons who might take to a class more restricted than the statute allowed, that the Supreme Court based its decision. It quotes also in its opinion language from Norwegian Old People's Home v. Wilson, 176

Ill., 94, to the effect that there is nothing illegal or against public policy in the action of the Association in narrowing the scope of its beneficial action.

But there is another view to be taken of the matter. What is "a blood relation"? Among people of the same race it is almost impossible for two people to go very far back in their genealogy and not run upon a common ancestor. Is there any law which arbitrarily says that second cousins are blood relations, and third, fourth or fifth cousins are not? If a line must be drawn, who is more entitled to draw it than the Association issuing the benefit certificate? We think the by-law is valid and effective, and that Mary Ensworth was an impossible beneficiary.

But if she were not, still there would be an insuperable difficulty. We cannot look at the provision of "$250 for masses and funeral expenses in care of Mrs. Mary Ensworth" as a designation of Mrs. Ensworth as a beneficiary of this money in trust. It is unnecessary for us to discuss whether such a trust could be created for a possible beneficiary to carry out. Conceding that it might be, if properly expressed, these words do not so express it. If valid, they would impose on the Association directly the burden of seeing that the money was properly applied and expended,— Mrs. Ensworth to have merely the direction and management of the services, not the control of the fund.

For the reasons given we think the certificate as it existed before the indorsement of July 1, 1905, was made on it, still in force, and the decree of the Superior Court is affirmed.                                                    *Affirmed.*