## AS TO WHETHER AN ATTEMPTED CHANGE OF BENEFICIARY WAS EFFECTUAL.

Court of Appeals for Wyandot County.

MARTHA KERR v. MARGARET BOWERS ET AL.*

Decided, March 23, 1915.

*Interpleader—Life Insurance Contracts—Change of Beneficiary— Waiver.*

1. Section 11265, General Code, is auxiliary to and not destructive of, the equitable remedy of interpleader. Hence, the custodian of a fund who claims no interest therein, not knowing to which of two or more persons, making claim thereto, under different titles he should pay the same, may file a petition in the nature of a bill of interpleader making such persons parties thereto, pay the money into court and have adjudicated the rights of said claimants thereto.

2. Where, in a policy of insurance the right to change the beneficiary is reserved to the insured, the beneficiary named therein has no vested interest in such policy until the death of the insured and such insured may, during his lifetime, designate another beneficiary at will. Hence, where such insured has, in the form and manner prescribed by such policy, executed and forwarded, together with the policy, to the company's home office, the instrument required to effect such change, but dies before such instrument reaches said company, and thereafter the company files a bill of interpleader and, making the rival claimants parties thereto, pays the money into court, such change of beneficiary is effectual, even though the company did not endorse the change of beneficiary upon the policy as provided therein, such provision being for the benefit of the company, is thereby waived.

*Finley & Gallinger*, for plaintiff in error.
*D. C. Parker* and *W. R. Hare* contra.

ANSBERRY, J.

This case was commenced by the New York Life Insurance Company filing a bill of interpleader in the Court of Common Pleas of Wyandot County, Ohio, in which Martha Kerr and

*Motion for an order directing the Court of Appeals to certify its record in this case overruled, May 18, 1915.

Margaret Bowers were named as defendants, which set forth in substance that said company, on the 26th day of February, 1901, entered into a contract of insurance with Robert E. Kerr, under the terms of which said company undertook and did insure the life of said Robert E. Kerr by the issuance of policy No. 3,124,789, and thereby agreed to pay $2,000 to Martha Kerr, wife of said insured, "or to such other beneficiary as may have been duly designated, on receipt of satisfactory proofs of the death of said Robert E. Kerr."

Said policy further provided:

"The insured may, at any time during the continuance of this policy, provided the policy is not then assigned, change the beneficiary or beneficiaries by written notice to the company, at its home office, accompanied by this policy; such change shall take effect on the endorsement of the same upon the policy by the company."

The company further alleges that on the 16th day of April, 1912, said Robert E. Kerr died. Satisfactory proofs of death were furnished, and by reason thereof said company became bound to pay the sum of $2,081.23, the amount due on said policy, but that said company was prevented from paying said sum for the reason that on the 18th day of April, 1912, said company received at its home office an instrument in writing in the words and figures following:

"KERR BROTHERS.   MILLERS AND DEALERS IN FLOUR,
"CORN MEAL, MILL FEED, ETC.

"UPPER SANDUSKY, OHIO, April 15, 1912.
"New York Life Insurance Company,
"346 Broadway, New York, N. Y.
"Gentlemen:
"I herewith assign New York Life Insurance policy No. 3,124,-789, issued to me March 4, 1901, to Mrs. H. W. Bowers, Upper Sandusky, Ohio, my sister, as beneficiary of said policy instead of Martha Kerr.
"Policy for $2,000 enclosed herewith for change.

"Witness:                      "Yours very truly,
"JANE KERR.                              (his)
"THOS. C. KERR.                   ROBERT X E. KERR.
"G. W. SAMPSON.                         (mark.)
"J. H. KERR."

On the 27th day of April, 1912, Margaret Bowers notified said company that by reason of said instrument she claimed the said sum of $2,081.23, and demanded payment therefor. That said Martha Kerr, wife of said Robert E. Kerr, disputes said claim and demands payment of said sum to her as beneficiary named in said policy.

The other formal allegations are such as are required in a bill of this character, and made, on behalf of the company, a case entitling the company to the relief asked, which was that said company be permitted to pay the money into court for its determination as to who should receive said sum.

That thereafter Martha Kerr and Margaret Bowers filed their respective cross-petitions in this action, and from the pleadings, the evidence and the admission of parties, the facts are found, briefly stated, to be that Robert E. Kerr separated from his wife, Martha Kerr, in April, 1906, and thereafter made his home at the family homestead with his mother, an aged lady, several brothers, and his sister, Margaret Bowers, cross-petitioner herein. That said Margaret Bowers had charge of the household; that said Robert E. Kerr, for a long period of time before his death, was afflicted with varicose veins and required a great deal of nursing and attention; that this attention was given to him by his sister, Margaret Bowers, and that a few days before his death he advised his relatives that it was his intention to compensate his said sister for her sacrifices and the services she had rendered him by assigning to her his policy of insurance in the New York Life Insurance Company. And that afterwards, to-wit, on the 15th day of April, 1912, he requested one of his brothers to go to his office safe and bring therefrom the said policy of insurance; and when it was brought to him, he gave the same to Margaret Bowers, and then executed the written instrument hereinbefore referred to and set forth, and caused the same, together with the policy, to be deposited in the mail, addressed to the New York Life Insurance Company, at its home office in New York City. Said Robert E. Kerr died the following day, to-wit, June 16th, 1912, and before the policy and written instrument making change of beneficiary reached said company. The company did not endorse this change of beneficiary upon the policy.

The court below found for and rendered judgment for Margaret Bowers.

Within three days thereafter, Martha Kerr filed her motion for new trial, which was overruled.

Thereafter she filed her petition in error in this court, averring a number of errors of the trial court, and praying a reversal of its judgment, and that this court render a judgment in favor of said plaintiff in error, Martha Kerr.

The question in this case is, whether or not the change of beneficiary attempted on the 15th day of April, 1912, through the instrumentality chosen by said Robert E. Kerr, was effective. However, before reaching this pivotal question in the case, several other points raised by counsel must be disposed of.

At the outset, objection was made by counsel on behalf of Martha Kerr to the introduction of any evidence in the case, which objection was overruled, and to which the defendant thereupon excepted.

Mrs. Bowers was required to elect whether she made claim for the amount of the policy by virtue of a gift and as a beneficiary thereunder, or by virtue of an assignment to her for a valuable consideration. She elected to claim under the assignment.

The objection to the introduction of any testimony, as it afterwards transpired, was on the ground that the filing of the bill of interpleader herein was without authority of law.

We think that no error was committed in overruling this objection for the reason that even though Section 11265 of the General Code does not furnish authority for this action, we are of the opinion that equity would take cognizance of such a proceeding. And we are supported in this contention by the case of *Mill Company* v. *Accident and Guaranty Company*, 11 C.C. (N.S.), 443, which holds that interpleader was recognized in courts of equity prior to the amendment of the statute. And the case of *Bank* v. *Beebe*, 62 O. S., 41, which holds that this section was intended as an auxiliary to the practice in chancery respecting interpleader.

*Pomeroy's Equity Jurisprudence*, Sections 1320 to 1329, inclusive, describes the general equitable jurisdiction to grant the remedy of interpleader independent of statute.

Counsel on behalf of Martha Kerr also raise the question of estoppel and argue it at some length both orally and in their brief, claiming that Mrs. Bowers is estopped from prosecuting this action for the reason that heretofore she presented a claim to the administrator of the estate of Robert E. Kerr for services for nursing and caring for him. Said claim having been rejected, she brought suit in the Court of Common Pleas of Wyandot County against said administrator, which suit is pending; and that her claim for services in nursing and caring for decedent, sued for in said action, is the identical one which she says was discharged and satisfied by the assignment of the policy of insurance, the subject-matter of this controversy.

We fail to see wherein Martha Kerr was adversely affected thereby, and hence hold that Margaret Bowers is not estopped, because of said action, from prosecuting her rights under this policy.

Coming, then, to the determining question in this controversy, we find a sharp conflict of the authorities and text-writers on this question, or, rather, on some phases of this question.

It is universally agreed by the text-writers and courts that the insured, under a contract of insurance with an old-line company, may change the beneficiary at will, where such right is reserved in the contract and not prohibited by statute.

In *Elliott on Contracts*, Section 4355, we find this text:

"The contract may reserve to the insured the right to change the beneficiary at will, and when this is done the original beneficiary acquires no vested interest in the policy or its proceeds, and until after the death of the insured he has a mere expectancy. This right to change the beneficiary may be reserved in the policy. * * *

"In ordinary life policies the beneficiary takes a vested interest the moment the policy is issued, and the insured can not change the beneficiary unless the express power to do so is reserved. It is equally well settled that when the right to change the beneficiary is reserved * * * the beneficiary named acquires no vested interest until the death of the insured, and prior to that time the insured may change the beneficiary at will."

In the policy, the subject-matter of this suit,· the insured expressly reserved the right to change the beneficiary, and did all in his power to effect this change when he executed and delivered the so-called assignment above referred to and set forth.

The case of *John Hancock Mutual Life Insurance Company* v. *White et al,* decided by the Supreme Court of Rhode Island and reported in the 40 Atlantic Reporter, page 5, holds:

"First. The provisions of a life insurance policy which permits a change of beneficiaries only with consent of the company is .for the benefit of such company; and where it waives such condition, or is estopped from pleading it, and the assured did everything in her power to make a change before her death, although the company did not consent thereto, the substituted beneficiary is entitled to the amount of the policy."

"Second. Where the insurance company files a bill of interpleader offering to pay the amount of the life insurance policy into court, it will be considered to have waived its right to object to a change of beneficiaries on the ground that it did not consent thereto."

It is contended on behalf of Martha Kerr that this attempted change of beneficiary was ineffectual for the reason that the policy contained the further proviso,              ,

"That such change was to take effect on the endorsement of the same upon the policy by the company."

And in support of this contention cited the case of *Fruend et al* v. *Fruend,* reported in the 75 N. E., page 925, by the Supreme Court of Illinois, which court holds:

"A New York statute (Laws 1892, p. 2015, c690, Section 211) requiring the consent of the insurance company to a change of beneficiary by insured becomes a part of a New York policy issued while such statute is in force, and is controlling on the subject covered thereby although the policy is silent concerning the same.

"Where an insurance policy provides that no change in beneficiary shall take effect until endorsed on the policy by the company at its home office, a change in the beneficiary can not be accomplished until the prescribed conditions are fulfilled."

\*   \*   \*   \*   \*   \*

"The rights of a beneficiary in a life insurance policy become fixed at the death of insured and are not affected by a contemplated change of beneficiary which insured had intended to make, but which had not been effected in accordance with the statute and terms of the policy at the time of his death.

"An insurance company can not, after the death of insured and the consequent vesting of the rights of the beneficiary, waive, as against the beneficiary, provisions of the policy relative to change of beneficiary.

"The act of an insurance company in filing a bill of interpleader and paying the proceeds of the policy into court, can not be urged by either of the claimants as against the other as a waiver by the company of non-compliance by insured with provisions of the policy for changing the beneficiary."

The facts in this case are very similar to the facts in the case at bar. Judge Magruder, in deciding it, pointed out that the laws of New York under which, as he said, the contract of insurance was made, were introduced in evidence. Particularly Section 211, which reads as follows:

"Membership in any such corporation, association or society shall give to any member thereof the right at any time, with the consent of such corporation, association or society, to make a change in his payee or payees, or beneficiary or beneficiaries, without requiring the consent of such payee or beneficiaries."

"This provision of the New York statute, which is admitted to have been in force in New York when the policy here in question was issued, became a part of the contract embodied in the policy by implication, with the same effect as if it had been embodied in the policy itself."

It is further said:

"All stipulations of the policy must yield to the statute, and in view of the fact that the provisions of the New York statute thus quoted is, by implication, a part of the policy or contract, this policy is to be regarded as one which requires the consent of the company to the change, the same as though the provisions of the statute were written into the policy itself."

In the case at bar the statute of the state of New York was neither pleaded nor offered in evidence and, of course, under the

authorities this court could not consider the statutes of a sister state unless they were both pleaded and proven. If this statute was a determining factor in the mind of the judge rendering the opinion in the Fruend case, to that extent it would be weakened as an authority in this case.

In the Rhode Island case, the insured sought to have the beneficiary changed in his policy, and through some inadvertance on the part of the company, or one of its agents, the beneficiary slip executed by the insured was mislaid, and before it had been found and the company had time to act upon it, the insured died, and the administrator of his estate, to whom the policy was first made payable, and Mrs. Dyer, in whose favor the beneficiary slip was executed, both claimed to be entitled to the insurance fund.

In that case the court said:

"We think Mrs. Dyer is entitled to the fund. The insured had done everything that was necessary on her part to change the beneficiary of the policy. The provision for the consent of the company to the change was solely for its protection, and, therefore, one on which it alone can insist. By filing its bill that the respondents interplead, and thereby offering to pay the fund as the court shall determine, it has waived its right to say that it did not consent, and no one else can urge the lack of its consent in its name."

This doctrine of waiver has been applied to contracts similar to the one under consideration in proceedings of this character by our Supreme Court in the case of *Keckley* v. *Glass Company*, reported in Volume 86 O. S., page 213, for, in its third syllabus, it says:

"Where a life insurance company makes no defense and pays the amount of its policy into court to abide the judgment of the court as between conflicting claimants, parties claiming an interest in the fund will not be allowed to object to the beneficiary named in the policy had no insurable interest."

It may be argued that the question of lack of insurable interest presents a different principle than the question of change of beneficiary, still there is no doubt that the court in the Glass Company case took the same view of the action of the insurance

company in filing a bill of interpleader as was taken by the Supreme Court of Rhode Island in the case referred to.

The doctrine announced by the Supreme Court of Rhode Island in the Dyer case, and by the Supreme Court of Illinois in the Fruend case, cited by counsel for Martha Kerr, are diametrically opposed to one another, but we are of the opinion that the sounder doctrine is announced in the Rhode Island decision. The trend of authority in the older states of the Union, where insurance and insurance law had their inception in this country, is in support of this doctrine.

Counsel for Mrs. Bowers cite the case of *Anna Herold* v. *Pacific Mutual Life Insurance Company,* reported in the 17 C.C. (N. S.), page 20.

In that case the insurance company filed a bill of interpleader so that the lawful beneficiary of a life insurance policy might be determined by the court as between two rival claimants. The amount due on the policy was paid into the court, as in this case.

The facts, briefly stated, were that Herold had a policy of insurance on his life and Anna Herold, his wife, was named as beneficiary. He sought to substitute his mother as beneficiary as trustee for his children in place of his wife. To consummate this change, in accordance with the provisions of the policy, an endorsement thereon by the company was necessary. The insured died pending the correspondence between himself and the insurance company with respect to this change, and the endorsement was never made. A judgment was obtained in favor of the mother as trustee in the trial court. Error was prosecuted to the circuit court. The circuit court held that the beneficiary did all that was within his power to do to change the beneficiary, and affirmed the judgment of the lower court.

We reach the same conclusion with reference to this case as did the court in the case just referred to, but on the grounds set forth in the case of *John Hancock Mutual Life Insurance Company* v. *White et al,* 40 Atlantic, page 5, and the case of *Keckley et al* v. *Glass Company,* 86 O. S., page 213.

It follows that the judgment of the court of common pleas must be affirmed.

CROW, J., and KINDER, J., concur.