Lillian Thompson, Appellee, v. Metropolitan Life
Insurance Company et al., Appellants.

Gen. No. 9,822.

Opinion filed February 24, 1943.   Rehearing denied April 15,
1943.

VERNON G. BUTZ, of Kankakee, for appellants.

JOHN A. MAYHEW, of Kankakee, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.
This case involves the validity of an instrument

changing the beneficiary in a life insurance certificate from appellee, Lillian Thompson, to appellant, Stella Steindler. Charles A. Thompson, now deceased, was an employee of the Florence Stove Company at its Kankakee, Illinois, plant, and J. M. Fawthrop was the local office manager. The main office of the company is at Gardner, Massachusetts. The certificate in controversy was issued through a group insurance arrangement between the employer and the Metropolitan Life Insurance Company. The group policy issued to the employer was dated January 28, 1932, and the certificate (No. 350) was issued to Thompson the same date. Originally it was for $3,000, which was increased to $3,750 on June 28, 1937. The original certificate named appellee, Thompson's wife, as beneficiary. On September 2, 1941, Thompson executed a change of beneficiary, dated the preceding day, substituting his sister, Stella Steindler, in place of appellee, and died at the Steindler home on September 4, 1941, about 7:35 o'clock, p. m. The certificate bears a register of the change, with the effective date as September 1, 1941.

Following his death, appellee instituted this suit in the circuit court of Kankakee county against the insurance company, the decedent's late employer, its local office manager, and Stella Steindler, to have the change of beneficiary set aside and declared null and void, on the grounds of mental incapacity of the insured, undue influence by the substituted beneficiary, and that the change was illegal and void. The insurance company deposited the proceeds of the certificate in court and filed an interpleader asking the court to determine which of the two claimants is entitled to the money. Upon a hearing the chancellor held against appellee on the claims of mental incapacity and undue influence, but further held that the change of beneficiary was not made in accordance with the provisions of the certificate and the laws of this State, and entered a decree ordering that the money so deposited be paid to ap-

pellee. Stella Steindler has appealed from the decree and appellee has filed cross-errors on the holdings as to mental incapacity and undue influence and these will be first considered.

The record discloses that Charles A. Thompson and appellee were married in March 1911, and lived together until August 27, 1941, when he left home and went to the home of his sister, where he died. Some months before that he became afflicted with a heart ailment which finally proved fatal, and he had been in a hospital during most of the preceding month of July, returning home about the 26th or 27th of that month. Without going into details, the evidence shows that Thompson left home on account of domestic infelicity, and while it appears that he might not have been wholly blameless, the testimony indicates that he left on account of appellee's repeated boisterous quarreling, in order, by his doctor's advice, to find a place where he could have peace and quiet. It also appears that he did not go to the Steindler home to stay until he had made inquiries and efforts to find other places to live.

During the time Thompson was in the Steindler home appellee visited him on one occasion, and Mrs. Steindler's husband required her to leave because of loud talk and argument with her husband about his pay day and sending the money home. Thereafter she was not permitted to come into the house. She testified that she and her husband always got along together except when he drank too much beer and she protested on account of his health; that they had arguments like any other married couple, but that they had no argument on the morning he left home. Appellee had previously been employed at a factory and in a restaurant for several years, and did the house work at home. She testified that when her husband left she procured employment at his request to keep up expenses around the home. She owned the premises

where they lived, and at her husband's death she received the proceeds of an insurance policy on his life for $2,000 in a fraternal insurance company, and a 1940 Buick automobile. It also appears that when the Steindlers had been out of employment some time previously they had lived with the Thompsons.

The change of beneficiary is dated September 1, 1941, and is witnessed by J. M. Fawthrop. He testified that Thompson signed it in his presence at the Steindler home on the morning of September 2, 1941; that Thompson talked to him about changing the beneficiary on two prior occasions within the week, at the second of which the witness left the form with him; that on the third visit Thompson said he had come to a decision and wanted to change the beneficiary; that at that time he said that changing the beneficiary from his wife might seem a little unusual, but there were some previous obligations that he wanted taken care of, and that he felt that his sister would be more apt to carry out his wishes than his wife; that Mrs. Steindler said his action was not of her choosing or desire and she did not want him to do it; and that Thompson replied: "This is my affair." The testimony fails to show any undue influence on the part of Mrs. Steindler.

Several witnesses produced by appellee testified to Thompson's illness, a change in his disposition, and in substance that he was nervous, depressed and irritable. None of them testified that in their opinion he was of unsound mind, except Mary Clark, who was employed at the Thompson home while he was there, and she did not see him during the last two weeks or more of his life. Thirteen witnesses, besides Mrs. Steindler's husband, including Mr. Fawthrop, who was produced as a witness by appellee, and the doctor who attended Thompson, all of them intimate acquaintances of Thompson for long periods, and who saw him shortly before his death, testified that in their opinion he was of sound mind. Under this evidence we would

not be justified in disturbing the finding of the chancellor in this respect.

The remaining question is whether the change of beneficiary was made in accordance with the terms of the policy and the applicable law. The certificate of insurance held by Thompson provides: "The right to change the beneficiary is reserved to the employee." On the back of the certificate appears the following:

"Register of Change of Beneficiary

NOTE—Entries in this Register are to be made only by the company. No other entries shall be recognized.

| Date Effective | Beneficiary | Endorsed By |
|---|---|---|
| 9–1–41 | Stella B. Steindler | M. W. Taylor." |

, Fawthrop testified that he mailed the change of beneficiary signed by Thompson, together with the certificate, to the home office of the Florence Stove Company at Gardner, Massachusetts, the same day the change in beneficiary was signed, and that it should reach there the second day, the morning of the 4th; and that he received the certificate back on the 10th or 11th of September. M. W. Taylor, who endorsed the "Register of Change of Beneficiary" is an official of the stove company at its home office.

Appellee claims that under the above mentioned provision of the certificate, the change of beneficiary was not effective because the endorsement was not made by the insurance company.

The opening paragraph of the certificate provides:

"Metropolitan Life Insurance Company Certifies that, under and subject to the Terms and Conditions of its Group Policy No. 6315—G. L. H. Charlie A. Thompson, an Employee of Florence Stove Company is insured for Three Thousand Dollars of Life Insurance and for a benefit of Thirty Dollars per week of Temporary Disability Insurance."

A hospitalization rider and the rider increasing the

amount of the insurance, contain similar provisions. At the bottom of page 1 of the certificate is the following:

"Certain provisions of the Group Policy are summarized on the succeeding pages. All Provisions of the Group Policy whether mentioned or not apply to the insurance evidenced by this Certificate."

Prior to May 1, 1938, the pertinent portion of section 9 of the group policy read:

"Section 9. Change of Beneficiary—Any Employee insured hereunder may, from time to time, change (Line 2) the Beneficiary by filing written notice thereof with the Company accompanied by the Certificate and Certificate (Line 3) Riders—if any—of such Employee. Such change shall take effect upon endorsement thereof by the Company on (Line 4) such Certificate and Certificate Riders—if any—and unless the Certificate and all Certificate Riders—if any—are so endorsed, the change shall not take effect. After such endorsement, the change shall relate back and take effect as of the date the Employee signed said written notice of change, whether or not the Employee be living at the time of such endorsement, but without prejudice to the Company on account of any payment made by it before receipt of such written notice."

A photostatic copy of section 9 and an amendment to the group policy effective May 1, 1938, executed by the insurance company and Thompson's employer were admitted in evidence. The applicable portion of the amendment reads:

"Metropolitan Life Insurance Company

Group Policy No. 6315–GLH bearing date of January 28, 1932 and insuring the Employees of Florence Stove Company (Herein called the Employer) is hereby amended as follows:

Amendment
Effective May 1, 1938,

I. By substituting the word 'Employer' for the

typewritten word 'Company' in the second and third lines of the first paragraph of Section 9 on page 4 thereof.''

From these several provisions of the certificate, the group policy, and the amendment to section 9 of the latter, it is obvious that they are tied together as one instrument, and that after the effective date of the amendment, an endorsement of a change of beneficiary was to be made by the employer and not by the insurance company, the same as if such a provision was contained in the certificate itself.

In *Freund v. Freund*, 218 Ill. 189; *McEldowney v. Metropolitan Life Ins. Co. of New York*, 347 Ill. 66; and *Equitable Life Assur. Society v. Stilley*, 271 Ill. App. 283, cited and relied upon by appellee, the factual situation was much different from that in the case at bar. In the *Freund* case, the insured held a policy in the New York Life Insurance Company, whose home office was in the State of New York. On June 16, 1902, the insured left his policy, with a signed written statement or order of change of beneficiary at the Chicago office of the insurer and died the next day. At that time a statute of the State of New York provided, in substance, that an insured should have the right at any time "with the consent of such corporation" to change the beneficiary. The policy provided "such change (of beneficiary) to take effect on the endorsement of the same upon the policy by the company," and further provided that each selection, change or revocation of a selection "shall not take effect until endorsed on this policy by the company at the home office." The court held that the change of beneficiary could only be made with the consent of the company in the manner pointed out by the statute and by the policy, and that it had not been done in that case. The opinion also holds that the principle that where the insured has done all he could to effect a change of beneficiary but dies before the change is

formally made by the company that a court of equity will regard the change as effected, does not apply to a change of beneficiary in a life insurance policy where the statute requires the consent of the company and the policy requires such consent to be indicated by endorsement on the policy at its home office.

There are several reasons why the *Freund* case is not controlling or persuasive here. There is no claim or showing that at the time the change of beneficiary in this case was signed by Thompson there was any statute of the State of New York, where the home office of the insurer is located, containing a provision similar to that mentioned in the *Freund* case. In order for the statute of another State to be available, either for the recovery of a right or as a defense, the statute must be pleaded and proved. (*Dearlove v. Edwards,* 166 Ill. 619; *City of Detroit v. Wabash Refining Co.,* 223 Ill. App. 246.) Even if there was such a statute, the consent of the insurer is manifested in this case by its delegation of authority to the employer to make the endorsement. Secondly, the group policy, which is a part of the contract of insurance, provides that the endorsement shall be made by the employer, instead of by the insurer, as in the *Freund* case. It also significantly provides that "after such endorsement, the change shall relate back and take effect as of the date the Employee signed said written notice of change, whether or not the Employee be living at the time of such endorsement." The policy in the *Freund* case does not appear to have contained any such provision. Furthermore, the burden of proving that the change of beneficiary was ineffective was upon appellee, and even if the endorsement before the insured's death had been necessary to accomplish the change, the evidence tends to show that in the ordinary course of events the papers would reach the home office of the employer on the morning of September 4th, and the insured did not die until that night, leaving the

inference that the endorsement could have been made before the insured's death, a situation impossible in the *Freund* case.

In the *McEldowney* case, *supra*, the policy provisions as to change of beneficiary were almost identical with those in the *Freund* case. The insured sent the insurer a letter, stating, "I want my policy fix just like I first sign up for it to my estate," giving the serial number and amount of the policy. In response, the insurer sent him a form for change of beneficiary, and there was evidence tending to show he finally received it, but nothing further appeared to have been done about it. The court held that in the light of the principles laid down in the *Freund* case it could not be said that a change of beneficiary had been effected. The policy provisions, like those in the *Freund* case, distinguish the *McEldowney* case from the case at bar. The *Stilley* case, *supra*, is in the same category.

In *Sun Life Assur. Co. of Canada v. Williams*, 284 Ill. App. 222, the court held that a notice of change of beneficiary executed by the insured on the day of his death was effective, although not endorsed on the policy until after his death, notwithstanding a provision of the policy reading: "such change to take effect only upon the endorsement of the same on the policy by the Company." The suit arose through an interpleader filed by the insurer and a deposit in court of the proceeds of the policy. After mentioning the *Freund* case, and the decisions in the *McEldowney* case and the *Stilley* case as based thereon, and citing 78 A. L. R. 974 as showing the weight of authority is contrary to the holding in the *Freund* case, the court stated that the designation of a beneficiary in the first instance is left to the exclusive wish of the insured; that the insurer is no more concerned in the redesignation of a beneficiary than it is in the original designation; that the change, so far as the beneficiary is concerned, is effected when the insured, in due form, makes the

change; that the endorsement by the insuring company merely registers the name of the new beneficiary; that such a policy provision is for the benefit of the insurer and can be waived by it; that by bringing the money into court the company makes a further recognition of its duty to make the endorsement as requested by the insured and its action in so doing cannot be questioned by a former beneficiary. On June 12, 1936 the Supreme Court denied leave to appeal and this case has been cited with approval in *Larson v. McCormack*, 286 Ill. App. 206, 208, and *Novotny v. Acacia Mut. Life Ins. Co.*, 287 Ill. App. 361, 364. We agree with the principles of law laid down in *Sun Life Assur. Co. v. Williams, supra,* and under that authority the change of beneficiary in this case was effectively accomplished.

The cross-errors are overruled and the holdings of the trial court on the questions of mental incapacity and undue influence are affirmed. That part of the decree holding that the change of beneficiary was not effected in accordance with the terms of the certificate and the laws of this State and directing the money deposited to be paid to appellee is reversed, and the cause is remanded with directions to enter a decree ordering the proceeds of the certificate to be paid to appellant, Stella Steindler.

*Decree reversed and cause remanded with directions.*