Gregory Kurgan, Minor, by Antonina Wijas, next friend, Appellee, v. Prudential Insurance Company of America and Walter Kurgan.
Appeal of Prudential Insurance Company of America, Appellant.

Gen. No. 44,961.

Opinion filed March 14, 1950. Released for publication April 3, 1950.

ECKERT, PETERSON & LEEMING, of Chicago, for appellant; OWEN RALL, WALTER W. ROSS, JR., and HERBERT C. LOTH, JR., all of Chicago, of counsel.

S. X. BLASZCZENSKI and MARION KOGUT, both of Chicago, for appellee.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

Gregory Kurgan, a minor, by Antonina Wijas, his next friend, filed a complaint in chancery for the reformation of an insurance policy issued by defendant, the Prudential Insurance Company of America, on the life of his mother, Estelle Kurgan, who died February 14, 1945, and to recover the face amount of the policy of $4,188. The insured's husband, who was plaintiff's father, was designated beneficiary in the policy, and was made a party defendant, but no order or judgment was sought or obtained against him, and he does not

179

join in this appeal. At the close of plaintiff's case, defendant made a motion for a finding in its favor, or in the alternative, to dismiss the complaint for want of equity, which was denied, and after evidence had been adduced on behalf of defendant, the chancellor, sitting without a jury, decreed that the policy be reformed so as to show a change of beneficiary from Walter Kurgan to the plaintiff; that the portion of the policy which designated Walter Kurgan as the beneficiary be set aside; and that judgment as at common law be entered for plaintiff in the sum of $5,019.12, representing the face amount of the policy, plus interest from the date of death of insured, and costs of the proceeding. The defendant insurance company appeals.

There is substantially no dispute as to the essential facts. Policy No. 12 681 173, with endowment and life insurance features, was issued to Estelle Kurgan November 21, 1943. It provided for dividends, loans, disabilities and accidental-death benefits, in return for monthly premiums payable for ten years or until prior death. The face amount of $4,188 was to be payable to the insured if living on November 13, 1953, or in the event of her prior death, to Walter Kurgan, her husband.

Under the general provisions of the policy appears the following: "Change of Beneficiary.—The Beneficiary under this Policy may from time to time be changed, upon proper written request while this Policy is in force and the submission of such written request to the Home Office, but such change shall become operative only if this Policy has been received at the Home Office and endorsed by the Company. After such endorsement has been made, the change shall take effect and any interest of any previous Beneficiary shall cease as of the date of such written request whether or not the Insured is living at the time of such endorse-

ment, but without prejudice to the Company on account of any payment made by it prior to such endorsement. . . ."

Application for the policy was made in two parts. In part 1, Estelle Kurgan reserved the right "at any time without the consent and to the exclusion of any beneficiary . . . to change the beneficiary. . . ." In part 2, she agreed that "(1) the matter contained in Parts 1 and 2 of this application shall become a part of the policy hereby applied for; (2) no agent has power in behalf of the Company to . . . bind the Company by making any promise or representation or by giving or receiving any information; [and] (3) my acceptance . . . of any policy issued on this application shall constitute an approval of the provisions contained in such policy. . . ."

John C. Cholewa, a special agent employed in the Chicago office of the defendant, procured Estelle Kurgan's application. His authority was limited to the solicitation of business for the company, to submitting applications to the examiner in defendant's Chicago office for forwarding to the home office, and to collecting the first premiums on the policies he sold.

When the policy was issued, the insured placed it in a cabinet drawer in her home, where it remained until after her death. In October or November of 1944, she became hospitalized. After her return from the hospital she contemplated changing the beneficiary in her policy, but took no affirmative steps toward that end. Subsequently, about the first week in January 1945, she returned to the hospital, and a day or two later she told her sister, Adele Wartell, that she wanted to make her son the beneficiary of her policy. While in the hospital she was visited regularly by her husband, Walter Kurgan, and by other relatives. On January 15, 1945, her parents, Stanley and Antonina Wijas, ac-

companied by John Cholewa, went to see her at the hospital. Cholewa brought three blank "request-for-change-in-beneficiary" forms which she read and signed. None of the requests were completely filled out; two contained only the name of Gregory Kurgan as primary beneficiary, without designating his relationship to the insured, and no other information whatsoever, and on these two forms her signature was witnessed by Cholewa and her mother, Antonina Wijas. Both of these requests bear date January 13, 1945. On the third form, also bearing the same date, no beneficiary was indicated and insured's signature was witnessed by Cholewa alone. The blanks were actually signed on January 15, and Cholewa took the forms with him that day when he left the hospital. He is no longer employed by defendant, resides in California, and was not a witness at the trial.

Estelle Kurgan left the hospital February 8, six days before her death, and stayed with her parents at their home until she died on February 14, 1945. On February 13, 1945, Cholewa mailed the applications back to the insured at the hospital, with a letter, purported to have been lost before trial, in which he stated that insured would be required to produce the policy in order to effect a change of beneficiary. The envelope, containing the applications and letter, was readdressed and forwarded by mail to the Kurgan home, where it was picked up by William Wroble, Kurgan's brother-in-law, and brought to Kurgan in the forenoon of February 14. Kurgan had gone over to visit his wife in the late morning of that day, and upon his return to his mother's home, where he was then staying inasmuch as he was sick himself, he found the envelope, which he opened that afternoon, and someone read him the contents of the letter. He testified that because of her sick and weakened condition, the letter was not shown to Estelle Kurgan, and she died later that day.

On February 15, 1945, Walter Kurgan executed a proof-of-death form which was witnessed by Cholewa and submitted to defendant. Thereafter, on February 20, Marion Kogut, one of plaintiff's attorneys, sent a registered letter to defendant at its home office, claiming that plaintiff was entitled to the proceeds of the policy. Defendant received the letter, but made no reply.

February 16, 1945, defendant was served with garnishment summons issued out of the circuit court of Cook county in case No. 44-C-6687, entitled "Walter Kurgan, for use etc. v. Prudential Insurance Company of America, a corporation," to which it filed answer admitting having in its possession proceeds due Walter Kurgan under the policy insuring his wife. April 4, 1945, judgment was entered against defendant, and the following day a check, payable to Kurgan in the amount of $4,108, the face amount of the policy less unpaid premiums amounting to $80, was issued by defendant. Kurgan authorized defendant's attorneys to pay his judgment creditors from the proceeds of that check, and he received the balance, for which, on April 10, 1945, he released defendant from all further obligations to him under the policy. The instant suit was filed some two weeks later, on April 26, 1945.

Plaintiff argues and seeks to have us infer that the insured "was unable to produce the insurance policy for endorsement because it was in the possession of her husband, who refused to surrender it. . . ." However, it was not controverted that the policy, at all times between the date of its delivery to Estelle Kurgan and her death, was kept continuously in her home in the same cabinet drawer where it had been placed by the insured when she first received it. Kurgan testified that no one ever asked him to get the policy for his wife, and there is nothing to explain why she could not

183

have given the key to someone else to enter the house for the purpose of securing the policy for her.

It is conceded that the method prescribed by the policy for changing a beneficiary was not followed; neither the blanks which the insured signed at the hospital, nor any request for change of beneficiary, was ever communicated to the home office. The policy was never sent to the home office of the insurance company for indorsement, and of course no indorsement was made.

 Plaintiff presented his case, and seeks affirmance, on the theory, which the chancellor adopted, that the insured did everything within her power to comply with the provisions of the policy prescribing the method to be followed for effecting a change of beneficiaries, and that since there was a substantial compliance, as his counsel contend, equity should regard the attempted change as having been effected during insured's lifetime. As against this theory, there is the question whether substantial compliance may be considered as controlling, or be considered at all, in a situation where the undisputed evidence discloses that the method prescribed for a change of beneficiary was not followed and where defendant never waived its right to strict compliance. This entails a consideration of certain established principles of insurance law, which, as stated in *Hintz v. Hintz,* 78 F. (2d) 432, "are so well settled that their statement hardly needs the support of judicial citations." It is fundamental, the court held, that "In the absence of a reservation in the insurance policy authorizing a change in beneficiaries no right of change exists. 14 R. C. L. 'Insurance,' page 1387." The original beneficiary has a vested right in the proceeds of the policy of which he cannot be divested so long as the policy remains in force, except with his consent; but where the insured has reserved by contract the right to change beneficiaries, the

original beneficiary has a mere contingent right to the proceeds, and if the insured dies without having exercised his right in accordance with the methods prescribed by the policy, the rights of the original beneficiary become vested. It is also well settled, as pointed out in the *Hintz* decision, that "Where the right to change beneficiaries is reserved, the language of the reservation clause must determine the extent of the right." Inherent in these rules is the necessity for protecting the insurer from paying the proceeds to a claimant other than the original beneficiary, and for this reason courts have recognized the right of the insurer to insist on strict compliance with the terms of the policy in changing beneficiaries. In the instant case the policy provisions are clear and unambiguous. Similar provisions were held valid and proper in the recent case of *Young v. American Standard Life Ins. Co.*, 398 Ill. 565.

In the majority of the reported cases involving a determination of the rightful beneficiary, the insurance company filed an interpleader, brought the proceeds of the policy into court, and asked the court to adjudicate the rights of the contesting claimants; and of course this is the common practice where rival claimants are involved. In such instances, the insurer waives strict compliance with the provisions of the policy; but its right to insist on strict compliance is both expressly and inherently recognized in the following decisions which hold that where the insurer has waived strict compliance, substantial compliance will effect a change of beneficiary. *Sun Life Assur. Co. of Canada v. Williams*, 284 Ill. App. 222; *O'Donnell v. Travelers Ins. Co.*, 332 Ill. App. 222; *Thompson v. Metropolitan Life Ins. Co.*, 318 Ill. App. 235; *Novotny v. Acacia Mut. Life Ins. Co.*, 287 Ill. App. 361; and *Prudential Ins. Co. of America v. Moore*, 145 F. (2d) 580.

In *Sun Life Assur. Co. of Canada v. Williams,* 284 Ill. App. 222, the leading case in this State and one which has been cited with approval in other jurisdictions, Vera Williams, the divorced wife of the insured, and Carl S. Williams, his father, were rival claimants for the proceeds of an insurance policy issued by the company on the life of the deceased. Vera Williams was the beneficiary in the policy when issued. The insured attempted to change the beneficiary to Carl S. Williams. The insured died the day he made application for the change, and the desired change was not indorsed on the policy until after his death. Vera Williams contended that because the indorsement was not made on the policy until after the death of the insured, it was ineffective. Carl Williams argued that where the insured had done all required of him to change the beneficiary, the indorsement on the policy was merely a ministerial act for the protection of the insurance company, and when made, effectively accomplished the change. In holding that the change was effective because the insurer had waived its right to require strict compliance by filing a bill of interpleader, the court adopted the theory of the majority of state courts illustrated by the case of *White v. White,* 194 N. Y. Supp. 114, and held that the redesignated beneficiary was entitled to the proceeds notwithstanding provisions in the policy requiring indorsement on the policy before change of beneficiary became effective, since such provision is for the protection of the insurance company, which may waive and did waive the requirement by filing an interpleader and depositing the proceeds in court.

In the *White* case the insured signed a request for a change of beneficiary on the day of his death. The request reached the office of the insurance company one or two days thereafter. The policy contained a provision that the change of beneficiary should take effect

upon the indorsement of such redesignation of beneficiary upon the policy, "and not before," a provision substantially the same as the New York statute. The New York court said that the provision "is clearly placed in the contract by the insurer for the protection of the company itself, to avoid a multiplicity of claimants, and can be used by such insurer as a defense in an action at law to recover the amount of the policy; but such defense can be waived by the company insuring, as in this case, by its indorsing such new designation thereon, and further by its paying the money into court and refusing to defend. The neglect to make this indorsement is not available in an action brought by a beneficiary to nullify the act of the insured in making a redesignation of a new beneficiary." Continuing, the court said: "Many cases bearing on the question here involved are cited, and from an examination of them it will appear that, while a change of beneficiaries must be made under certain formalities for the protection of the insurer, yet, in cases where the company has waived defending by interpleading, and has paid the money into court, and has no further interest in the litigation between the parties, a far more liberal rule obtains, and that courts of equity seek to do that which the insured apparently intended to have done. . . . ." In the *White* case an officer of the insuring company had testified that the indorsement on the policy was not a "consent" but was "an indorsement of the change made by the insured." Mr. Justice McSurely, speaking for the court in the *Sun Life Assur. Co.* case, observed that "This construction seems to us in accord with reason. The designation of a beneficiary in the first instance is left to the exclusive wish of the insured; the insuring company is not concerned, except to be informed of the name of the beneficiary; where the right to redesignate the beneficiary is reserved in the policy the insuring company is no more concerned

187

than in the first instance; the change is not conditioned upon the consent of the insurer; the change, so far as any beneficiary is concerned, is effected when the insured in due form makes the change; the indorsement by the insuring company merely registers the name of the new beneficiary.'' Leave to appeal was denied by the Supreme Court of Illinois in the *Sun Life Assur. Co.* case, and it is cited with approval in *Novotny v. Acacia Mut. Life Ins. Co.*, 287 Ill. App. 361; *Thompson v. Metropolitan Life Ins. Co.*, 318 Ill. App. 235; *Prudential Ins. Co. of America v. Moore,* 145 F. (2d) 580; and *O'Donnell v. Travelers Ins. Co.,* 332 Ill. App. 222, all of which were actions of interpleader.

 The foregoing decisions enunciate the rule that substantial compliance is enough to effect a change of beneficiaries; but this rule applies only where the insurer has waived strict compliance. Defendant's counsel say they find no Illinois case wherein the insurer actually asserted its right to insist on strict compliance, and that the instant case, is, in a sense, one of first impression in this state, on the facts. However, in *O'Donnell v. Metropolitan Life Ins. Co.,* 11 Del. Ch. 4, 95 Atl. 289, aff'd *Metropolitan Life Ins. Co. v. O'Donnell,* 11 Del. Ch. 404, 102 Atl. 163, the court had occasion to consider the question whether an insurance company which had paid the policy proceeds to the original beneficiary, after failure of strict compliance by the decedent as to changes of beneficiary, was liable to the requested new beneficiary. There the claimed new beneficiary of a policy issued by defendant brought an action in chancery against the insurance company and the administrator of the original beneficiary to compel an equitable assignment of the policy. The insurer defended on the ground that it had paid the proceeds of the policy to the administrator of the original beneficiary because of the insured's failure to submit the policy for change of beneficiary in accord-

ance with policy provisions. It appeared from the evidence that the reason for the insured's failure to submit the policy for indorsement was the deliberate refusal of the administrator to surrender the policy to the insured. It also appeared that after being served with process in the suit of one of the claimants, the company paid the other claimant. The court held that the insurer was not liable to complainant because the provisions of the policy were not complied with, but also held that the administrator of the original beneficiary would not be permitted to take advantage of his own wrong and thus he became liable to complainant for the proceeds which he had collected, presumably upon the theory that equity having once obtained jurisdiction of the parties, could adjudicate all equitable rights involved.

*O'Donnell v. Metropolitan Life Ins. Co.* was cited with approval by the Delaware court in *New York Life Ins. Co. v. Cannon,* 22 Del. Ch. 269, 194 Atl. 412. That was an interpleader suit brought by the insurer to determine the rightful claimant to the proceeds of a policy issued by it. Prior to his death the insured had attempted to change the beneficiary, but was unable to comply strictly with the requirements of the policy because the original beneficiary refused to surrender it. In holding that a change was effected, the court said: "That the change was not made in strict conformity with the terms of the policy is clear, for the application was not accompanied by the policy. . . . A provision in a life insurance policy that a change of beneficiary must be evidenced by an application accompanied by the policy and by an endorsement on the policy, was said by the chancellor in *O'Donnell v. Metropolitan Life Ins. Co., supra,* affirmed 11 Del. Ch. 404, 102 Atl. 163, to be for the protection of the company to the end that it would not be made liable to pay a loss more than once. There is no risk of a double liability in this case,

however, for the fund is in court and all rival claimants are present. In that situation the object which the provision was intended to serve is in no danger of frustration. The bringing of the fund into court and the demand by the company that the rival claimants litigate their respective claims thereto, constitute a waiver by the company of a compliance by the insured with the provision as to surrender of the policy on a change of beneficiary. . . . If there was an intent to transfer the benefits of the policy from the old to a new beneficiary and that intent was plainly manifested by acts as complete as the circumstances would admit of, I do not see that it is important in a court of equity, where the contest is solely between the old beneficiary and the new one, that the transfer was not evidenced in strict accordance with a provision of the policy which was designed solely for the protection of the insuring company.'' In addition to the Illinois cases to which we have referred and the Delaware decisions, defendant's counsel cite numerous other authorities which adopt the rule that the insurer has a right to insist on strict compliance, as interpreted by the decisions, with the change-of-beneficiary provisions. *National Life & Accident Ins. Co. v. Bryant,* 27 Tenn. App. 294, 179 S. W. (2d) 937, certiorari denied by Sup. Ct. 1944; *Provident Mut. Life Ins. Co. of Philadelphia v. Vonder Heide,* 54 F. Supp. 311; *Deyo v. Grosfeld,* 294 N. Y. Supp. 1010, appeal denied, 294 N. Y. Supp. 1015.

Plaintiff stresses the point that strict compliance with the provisions of the policy with respect to change of beneficiary is required only in those cases where the consent of the insurance company must be obtained, and his counsel rely heavily on *Freund v. Freund,* 218 Ill. 189. That decision did not involve the insurer's right to insist on strict compliance, because strict compliance was waived by filing an action of interpleader. The *Freund* case, as pointed out in *Sun Life Assur. Co.*

190

*of Canada v. Williams,* rested upon a statute of the State of New York, the home office of the insurance company, to the effect that no change of beneficiary could be accomplished except by the indorsement of the same upon the policy, which indorsement was never made. The *Freund* case stands for the proposition that where the insurer's consent is required by statute, even the original beneficiary has a right to insist on strict compliance.

In the view we take the legal aspects of this proceeding are controlling, and it is therefore unnecessary to discuss factual questions urged by plaintiff with respect to Cholewa's authority and the circumstances surrounding the attempted, but ineffectual, change of beneficiary by the insured.

█ We are of opinion that defendant was entitled to judgment as a matter of law, and that the chancellor erred in denying defendant's motion in its favor at the close of plaintiff's case and again in entering the decree in favor of plaintiff. Since it would serve no useful purpose to remand the case, the decree and judgment of the superior court is reversed without remandment.

*Decree and judgment reversed without remandment.*

SCANLAN and SCHWARTZ, JJ., concur.